IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DOMINIQUE A. GILORMINI-DE GRACIA-DE GRACIA, TATIANA COLORADO APONTE; and the Conjugal Partnership constituted by them., <br><br>**Plaintiffs,** <br><br>v. <br><br>UNIVERSIDAD INTERAMERICANA DE PUERTO RICO, INTER AMERICAN UNIVERSITY OF PUERTO RICO, INC.; JOSÉ R. MUÑOZ ÁVILA; JULIO FONTANET; RAFAEL RAMÍREZ RIVERA; AIG INSURANCE COMPANY - PUERTO RICO; JOHN DOE; JANE DOE; ACME INSURANCE, <br><br>**Defendants.** | CIVIL NO. 22-1592 (JNL) |

**OPINION AND ORDER**

LAPLANTE, D.J.

Dominique A. Gilormini-De Gracia and Tatiana Colorado Aponte (collectively "Plaintiffs") filed this action alleging violations under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 at seq. for noncompliance with notification requirements required under the Consolidated Omnibus Reconciliation Act ("COBRA"), 29 U.S.C. § 1166. Docket No. 1, ¶ 1-2. The Complaint additionally brings forth several Puerto Rico law claims for breach of contract, wrongful discharge under P.R. LAWS. tit. 29, § 185a, et seq. ("Law 80"), discrimination because of marriage under P.R. LAWS. tit. 29, ("Law 100"), retaliation in violation of P.R. LAWS. tit. 29, § 194a ("Law 115"), defamation and tort damages under P.R. LAWS. tit. 31, §§ 10801, 10805 (formerly known as Article 1802). *Id.*, ¶ 2. Before the

Court are Co-Defendants, Inter American University of Puerto Rico, Inc., and AIG Insurance Company-Puerto Rico's Partial Motion to Dismiss at Docket No. 20[1], as well as individual defendants Julio Fontanet and Rafael Ramírez Rivera's Motion to Dismiss at Docket No. 21, and José R. Muñoz Ávila's Motions to Dismiss at Docket Nos. 22 and 23.

## BACKGROUND

The following facts are drawn from the Complaint, which the Court takes at face value under the applicable standard. Fed. R. Civ. P. 12(b)(6).

Plaintiff Dominique A. Gilormini-De Gracia ("Gilormini-De Gracia") was employed by Co-Defendant Inter American University of Puerto Rico ("Inter American University") for a period of more than nine (9) years as Executive Director of the Office of the President and a tenured full time law professor at the Inter American University's School of Law. Docket No. 1, ¶¶ 10, 24. As part of his employment, Gilormini-De Gracia was insured through a Group Health Plan, which the Inter American University sponsored. *Id.,* ¶ 15. While employed at the Inter American University, Gilormini-De Gracia received salary increases and favorable evaluations. *Id.,* ¶ 25.

On March 10, 2022, Gilormini-De Gracia began to voice concerns to Domingo Más, a trustee and Chair of the Auditing and Compliance Committee, as to Jose Muñoz's conduct pertaining to an Orlando Development Project. *Id.*, ¶ 29. Gilormini-De Gracia also communicated his apprehensions to trustee Manuelita Muñoz Rivera, the president of

---

[1] Co-Defendant AIG Insurance Company-Puerto Rico filed a Motion for Joinder as to the Motion to Dismiss at Docket No. 20. *See* Docket No. 26. The Court also underscores that—as noted in Plaintiffs' Omnibus Opposition to Defendants' Motions to Dismiss, Docket No. 27—while the motion is titled as a Motion to Dismiss, the motion is in fact a *Partial* Motion to Dismiss as it does not seek dismissal of Plaintiffs' Employment Retirement Income Security Act and Consolidated Omnibus Reconciliation Act claims. Docket No. 27 at 2; *see also* Docket No. 20.

2

Intelligence and Forecasting Corp., and his direct supervisor Manuel J. Fernós López-Cepero. *Id.*, ¶¶ 30-31. Gilormini-De Gracia's complaints pertained to alleged

> questionable conduct and conflict of interests of the Chairman of the Board of Trustees of [the Inter American University], co-defendant José Muñoz, with consultants/contractors of the Board such as Manuel E. Maldonado Cotto, President and CEO of Intelligence and Forecasting Corp; also with the architect and lawyer of the Orlando Development Project that Gilormini-De Gracia as part of his duties was requested to coordinate.

*Id.,* ¶ 27. In response to his complaints and concerns, on March 23, 2022, Gilormini-De Gracia was suspended by Co-Defendant José Muñoz. *Id.*, ¶ 32. Furthermore, Co-Defendants José Muñoz and Rafael Ramirez Rivera allegedly levied false accusations of fraud against Gilormini-De Gracia and spread on news programs hosted by local media personalities Mayra Lopez Mulero and Jay Fonseca.[2] *Id.*, ¶¶ 33-35. On June 21, 2022, Gilormini-De Gracia was terminated from his position as Executive Director of the Office of the President of the Inter American University. *Id.,* ¶ 27.

After Gilormini-De Gracia filed an additional complaint with the Middle States Commission on Higher Education to report the alleged "illegal conduct" and "violations to the faculty manual;" he was terminated from his tenured professor position and an alleged defamatory media campaign was orchestrated by Defendants. *Id.*, ¶¶ 28, 36. Gilormini-De Gracia contends his termination constitutes a breach of contract and was conducted without due process as required under Puerto Rico law. *Id.*, ¶ 41. Gilormini-De Gracia did not receive his salary due to him, and his medical insurance was canceled without notification. *Id.* Plaintiffs contend Gilomarini was wrongfully terminated from his position as Executive Director of the Office of the President in retaliation for internal complaints he filed. Docket No. 1, ¶ 27.

---

[2] The Complaint does not provide what the alleged statement were.

3

After Gilormini-De Gracia's termination, Plaintiff Tatiana Colorado ("Colorado")—who had been employed by the Inter American University's Office of Academic and Student Affairs for roughly eight (8) years in good standing—resigned in response to the hostile work environment fostered by Defendants due to her marriage to Gilormini-De Gracia. *Id.*, ¶¶ 42-45. Gilormini-De Gracia and Colorado allege damages as a result of the public humiliation, mental anguish, and emotional stress they endured as a result of Defendants retaliatory actions. *Id.*, ¶¶ 46-47.

## APPLICABLE STANDARD

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must "rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## ANALYSIS

I. **Inter American University's Partial Motion to Dismiss**

In its Partial Motion to Dismiss, the Inter American University requests that the Court decline to exercise its supplemental jurisdiction over the Puerto Rico law claims as "they

4

predominate over the claim under ERISA and COBRA." Docket No. 20, ¶ 5. The Inter American University, in the alternative, argues for dismissal of Colorado's claims as they do not stem from ERISA or COBRA and do not "arise from the common nucleus of operative facts," as required under 28 U.S.C. § 1367. *Id.,* ¶ 6. Finally, the Inter American University seeks dismissal of the defamation claim as insufficiently pleaded under Fed. R. Civ. P. 12(b)(6). Docket No. 20, ¶ 7. Counter wise, Plaintiffs argue that "consideration of factors such as fairness to the litigants, convenience and judicial economy should move this court to deny UIPR's request to dismiss the supplemental claims." Docket No. 27, at 2. Plaintiffs further aver that the Puerto Rico law claims do arise "from the same [nucleus] of operative facts." Docket No. 1., ¶ 7. The Court first addresses whether the Puerto Rico law claims predominate over the Puerto Rico law claims, which compose the majority of Plaintiffs' Complaint.

### A. Supplemental Jurisdiction

District Courts are provided broad discretion to exercise supplemental jurisdiction. *Chungchi Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 37 (1st Cir. 2003). "A federal court that exercises federal question jurisdiction over a single claim may also assert supplemental jurisdiction over all state-law claims that arise from the same nucleus of operative facts." *Ortiz-Bonilla v. Federacion de Ajedrez de P.R., Inc.*, 734 F.3d 28, 35 (1st Cir. 2013)(citations omitted). 18 U.S.C. § 1367 provides "federal courts supplemental jurisdiction over all claims that are part of the same Article III case or controversy." *Global Naps, Inc. v. Verizon New Eng. Inc.*, 603 F.3d 71, 86 (1st Cir. 2010). Notwithstanding, 18 U.S.C. § 1367 subsection (c) specifies exceptions for when the District Court can refuse to exercise supplemental jurisdiction. *Id,* at 86-87.

> **(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

> **(1)** the claim raises a novel or complex issue of State law,
>
> **(2)** the claim substantially predominates over the claim or c laims over which the district court has original jurisdiction,
>
> **(3)** the district court has dismissed all claims over which it has original jurisdiction, or
>
> **(4)** in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 USCS § 1367(c). Beyond such, the Supreme Court has affirmed that "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727 (1966); *see also Allstate Interiors & Exteriors, Inc. v. Stonestreet Constr., LLC*, 730 F.3d 67, 73 (1st Cir. 2013).

The only federal cause of action asserted in the Complaint is the termination without notice of Plaintiff Gilormini-De Gracia's health insurance plan without notice as required under ERISA and COBRA. Five of Plaintiffs' six claims arise under Puerto Rico law. The Puerto Rico law claims are (1) wrongful discharge under Law 80, (2) discrimination because of marriage under Law 100, (3) retaliation under Law 115, (4) breach of contract, and (5) defamation under Article 1802.[3] Thus, the Court considers the ERISA/COBRA claim as against the Puerto Rico law claims under the *Gibbs* framework.

For a plaintiff to succeed under a claim of failure to notify of termination of a health care plan subject to ERISA under COBRA, plaintiff must show a qualifying event—such as

---

[3] The Complaint lists a seventh cause of action against AIG Insurance Company and ACME Insurance as jointly and severally liable with all defendants "for the damages caused by their insured, pursuant to the terms and coverage of their respective policy of insurance." Docket No. 1 at 18.

termination "other than by reason of such employee's gross misconduct." *Rodriguez v. Oriental Fin. Group Inc.*, 802 F. Supp. 2d 350, 354-355 (D. P.R. 2011). The burden then lies upon the plan administrator to show "adequate COBRA notification was given to the employee." *Id.*, at 355 (citing *Torres-Negron v. Ramallo Bros. Printing Inc.*, 203 F.Supp.2d 120 (D. PR. 2002)). Besides a requirement that notification be furnished in writing, COBRA provides little additional guidance as to how notice is to be provided. *Id.* "A penalty of up to $110 per day may be" imposed if it is found that there was a failure to notify. *Villanueva v. Lambert*, 339 F. Supp. 2d 351, 359 (D.P.R. 2004). Notwithstanding, Courts are reluctant to impose such penalties absent a showing of bad faith and prejudice suffered by plaintiff. *Id.* By contrast "the scope and proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought" under the Puerto Rico law claims far exceed those under the federal COBRA claims. *Gibbs*, 383 U.S. at 726-727. The Court addresses each Puerto Rico law claim in turn.

### 1. Law 80 Wrongful Discharge, Law 100 Discrimination Because of Marriage, and Law 115 Retaliation.

Puerto Rico Law 80 bars termination of an employee "made by the mere whim of the employer of without cause relative to the proper and normal operation of the establishment." *Baralt v. Nationwide Mut. Ins. Co.*, 251 F.3d 10, 15 (1st Cir. 2001). Plaintiffs' wrongful discharge claim requires that they demonstrate that the stated reason for their termination was pretextual. *See Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 338 (1st Cir. 2022) ("[U]nder Law 80, Puerto Rico's wrongful discharge statute, a plaintiff who cannot meet his burden to show pretext under the *McDonnell Douglas* framework cannot make out a claim for wrongful discharge under Law 80 because the employer has 'good cause' for the termination.") (emphasis in original). Furthermore, per Law 80, "the remedy available to a

former employee is a compensation equivalent to a month's salary, plus a week's salary for each year of service." *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 P.R. Dec. 500 (1994). This is a far more extensive remedy than those available for violation of COBRA's notification requirements.

Similarly, Law 100—Puerto Rico's general employment discrimination statute—provides a cause of action for wrongful termination and or discrimination against an employee "on the grounds of age, as defined below, race, color, sex, sexual orientation, gender identity, social or national origin, social condition, political affiliation." 29 L.P.R.A. § 146. As with the Law 80 claim, a Law 100 claim requires that Plaintiffs make "a preliminary showing that [] discharge [or constructive discharge] was without just cause." *Baltodano v. Merck, Sharp & Dohme (I.A.) Corp.*, 637 F.3d 38, 43 (1st Cir. 2011); *see also Baralt v. Nationwide Mut. Ins. Co.*, 251 F.3d 10, 16 (1st Cir. 2001)("Under Law 100, a plaintiff establishes a prima facie case of [] discrimination by (1) demonstrating that he was actually or constructively discharged, and (2) alleging that the decision was discriminatory. If this minimal showing is made, the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions.") (internal citations omitted). Just cause under Law 100 and Law 80 is analyzed under the same standard. *Baltodano,* 637 F.3d at 43. Once a *prima facie* claim for discrimination has been made, as with Law 80, the burden then shifts to the employer to "show that discharge was justified." *Id.* (citing *Alvarez-Fonseca v. Pepsi Cola Bottling Co.*, 152 F.3d 17, 27 (1st Cir. 1998)). Law 100 provides various comprehensive remedies to plaintiffs. *See* 29 L.P.R.A. § 146.

Finally, Plaintiffs' Law 115 retaliation claims require

> proof of a violation by demonstrating that the employee participated in an activity protected by §§ 194 *et seq.* and was sequently (*sic*) discharged, or threatened or discriminated against regarding her employment. Once a *prima facie* case is established, the employer then bears the burden of providing a nondiscriminatory, legitimate reason for the employee's

8

>discharge. An employee can then demonstrate that the proffered reason is a mere pretext.

*Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 318 (D.P.R. 2010) (internal citations omitted). This showing far exceeds the scope of proof and issues raised under a COBRA notification claim.

Measuring the ERISA/COBRA claim against the Law 80, Law 100 and Law 115 claims, it is evident that the scope of the issues raised under the failure to notify claim are far narrower in nature. Simply put, the issue is limited to whether, after termination, Plaintiffs were notified in writing of termination of their health care plan. This does not require extensive proof. Finally, the remedy provided is limited and rarely imposed unless the Court finds the parties acted in bad faith or prejudice was suffered. Even if Defendants were to raise the defense that Plaintiffs were terminated for gross misconduct, thus waiving the notification requirements of ERISA/COBRA, such would not change the fact that the scope of issues raised, proof, and remedy sought under the Law 80, Law 100, and Law 115 claims far exceed those under the ERISA/COBRA claim. Thus, the Court turns to the remaining claims.

**2. Breach of Contract**

Plaintiff Gilormini-De Gracia's breach of contract claim parallels his claims made under Law 80, Law 100, and Law 115, in that the claim centers around his termination of employment in violation "of the contract [he] had as a tenured full-time professor." Docket No. 1, ¶ 57. Plaintiff would need to illustrate that a valid contract existed, if said contract was breached, and prove resulting damages. *Doe v. Brown Univ.*, 943 F.3d 61, 67 (1st Cir. 2019). Furthermore, as with Law 80, Law 100, and Law 115, "just cause for termination is an affirmative defense to a breach of contract claim." *Eaton v. Town of Townsend*, Nos. 22-1334, 22-1335, 2023 U.S. App. LEXIS 11381, at *17-18 (1st Cir. May 9, 2023). The Court understands that the considerations

and depth of proof would fall into the realm of Law 80, Law 100, and Law 115's deliberations of just cause for termination that resulted in the alleged breach of contract. Thus, as discussed above, the breach of contract claim would far exceed that of an ERISA/COBRA claim.

### 3. Defamation

Finally, the Court turns to Plaintiffs' defamation claim. Under Puerto Rico law, a defamation claim arises from three sources: (i) Article II, section 8 of the Puerto Rico Constitution; (ii) the Libel and Slander Act of 1902, P.R. Laws Ann. tit. 32, §§ 3141-49; and (iii) Article 1536 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 10801. *Aponte v. Calderón*, 284 F.3d 184, 197 (1st Cir. 2002) (citations omitted). "Puerto Rico law on libel and slander follows the common law tradition. [Thus,] the Puerto Rico courts frequently cite stateside jurisdictions when interpreting their laws protecting personal reputation." *Id.* (cleaned up). The Libel and Slander Act provides that,

> Libel is the malicious defamation of a person made public by . . . publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him . . . .

P.R. Laws Ann. tit. 32, § 3142. The protections offered by defamation statutes are limited by the First Amendment's right to free speech. The First Amendment "provides protection for statements that cannot reasonably [be] interpreted as stating actual facts." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (cleaned up). Courts faced with First Amendment issues must ensure that "the judgment does not constitute a forbidden intrusion on the field of free expression." *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964). A plaintiff asserting a defamation claim under Puerto Rico law must show "(1) that the information is false, (2) that plaintiff suffered real damages, and (3) in the case of a private figure plaintiff, that the publication was negligent."

*Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 98 (1st Cir. 1996) (cleaned up). As a threshold matter, a plaintiff must "prove that the alleged defamation is false." *Id*. Additionally, under Puerto Rico law, "[a] publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding." P.R. LAWS ANN. tit. 32, § 3144. The Supreme Court of Puerto Rico has held that a complaint is "[a] publication or communication . . . made in [a] . . . judicial proceeding and that any statement pleaded therein shall not be deemed malicious for purposes of the libel action if it has a bearing on the issue in controversy." *Giménez Alvarez v. Silén Madonado,* 131 P.R. Offic. Trans. 91, 99 (1992) (cleaned up). It is clear that Plaintiffs' defamation claim considerably outsizes and exceeds the breadth of proof, scope, and remedy of the Plaintiffs' ERISA/COBRA claim.

The Court finds that Plaintiffs' Puerto Rico law claims substantially predominate here, and declines to exercise supplemental jurisdiction.[4] The Inter American University of Puerto Rico, Inc., and AIG Insurance Company-Puerto Rico's Partial Motion to Dismiss at Docket No. 20 is hereby **GRANTED**. The Court shall now address the individual defendants Motions to Dismiss simultaneously.

---

[4] Notwithstanding the Court's finding that the Puerto Rico law claims predominate over the federal claims, the Court additionally notes that if the Court were to exercise jurisdiction over them, the Plaintiffs' Puerto Rico law claims warrant dismissal for failing to meet the applicable pleading standards. Plaintiffs' pleadings are conclusory and furnish few if any facts to support their claims. Most notably, Plaintiffs' defamation claim simply states that "defamation and gossip against Gilormini who is a private citizen has been promulgated by defendants and republished again and again in different news outlets and news programs such as Mayra López Mulero, Jay Fonseca, Bonita Radio and Angel Rosa." Docket No. 1, ¶ 83. The Complaint is devoid of any explanation as to what alleged disparaging statements were made, which likely would have been a fatal omission for a defamation claim if this Court had retained jurisdiction over it. The Court reminds Plaintiffs that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 125 (1st Cir. 2013) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).

## II. Individual Defendants Julio Fontanet, Rafael Ramírez Rivera, and José R. Muñoz Ávila's Motions to Dismiss

As the Court has decided not to exercise supplemental jurisdiction as to the Puerto Rico law claims, the only remaining claims as to the individual defendants are those which arise under COBRA. Nonetheless, while the First Circuit has not ruled upon the issue, "[t]his district has followed the majority of circuits that have confronted this issue holding that no personal liability can attach to agents and supervisors under Title VII, ADA, ADEA or COBRA."[5] *Sanchez v. Autoridad de Energia Electrica*, 360 F. Supp. 2d 302, 318 (D.P.R. 2004). Wherefore, the only claim that remains before this Court is the ERISA/COBRA notification violation against the Inter American University. In light of such, individual defendants Julio Fontanet and Rafael Ramírez Rivera's Motion to Dismiss at Docket No. 21, and José R. Muñoz Ávila's Motions to Dismiss at Docket Nos. 22 and 23, are hereby **GRANTED**.

## CONCLUSION

The claims raised under Puerto Rico law substantially predominate, over the federal law claims. The Court **GRANTS** the Inter American University of Puerto Rico, Inc., and AIG Insurance Company-Puerto Rico's Partial Motion to Dismiss at Docket No. 20, as well as individual defendants Julio Fontanet and Rafael Ramírez Rivera's Motion to Dismiss at Docket No. 21, and José R. Muñoz Ávila's Motions to Dismiss at Docket Nos. 22 and 23, as to the Puerto Rico law claims in accordance with Section 1367(c) and Plaintiffs' claims under COBRA as to the individual defendants. The Court understands this results in a circumstance in which Plaintiffs' claims are bifurcated between two Courts. Plaintiffs, should they prefer to maintain a

single lawsuit in a single court, are not barred from litigating their COBRA claim in the Puerto Rico Court of First Instance along with their Puerto Rico law claims. Plaintiffs' Puerto Rico law claims are **DISMISSED WITHOUT PREJUDICE**.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico, this Wednesday, March 27, 2024.

_____
Joseph N. Laplante
United States District Judge

cc:    Counsel of record.